IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Civil Action No. 3:25CR39 (RCY) |
| | ) |
| CHARLES ALEXANDER, | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Charles Alexander's Motion to Exclude Predicate Convictions Under 18 U.S.C. § 924(e) ("Motion to Exclude"), ECF No. 17. The question before the Court is whether Mr. Alexander's previous convictions under Va. Code Ann. § 18.2-53.1 constitute categorical crimes of violence for purposes of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The Motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. For the reasons stated below, the Court will deny Mr. Alexander's Motion.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On March 18, 2025, an Indictment was returned against Mr. Alexander charging him with one count of Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). Indictment 1, ECF No. 1. The Indictment alleges that, at the time of the instant offense, Mr. Alexander had committed at least three qualifying convictions under the ACCA. The briefing on the instant Motion reveals that those purportedly qualifying convictions consist of one conviction for Virginia First Degree Murder and two convictions for Use of a Firearm in the Commission of a Robbery, in violation of Va. Code Ann. § 18.2-53.1. Mot. Exclude 2, ECF No. 17.

On April 14, 2025, Mr. Alexander filed the instant Motion to Exclude. On April 28, 2025, the Government filed its Response in Opposition to Defendant's Motion to Exclude Predicate Convictions ("Government's Response"), ECF No. 21. Mr. Alexander did not file a Reply.

Following the Court's initial consideration of the parties' respective materials, the Court ordered supplemental briefing addressing three Virginia cases: *Startin v. Commonwealth*, 706 S.E.2d 873 (Va. 2011), *Cromite v. Commonwealth*, 348 S.E.2d 38 (Va. Ct. App. 1986), and *Johnson v. Commonwealth*, 163 S.E.2d 570 (Va. 1968), as they related to the ACCA's violent force requirement, *see Johnson v. United States*, 559 U.S. 133, 140 (2010), and its *mens rea* requirement, *see Borden v. United States*, 593 U.S. 420, 429 (2021). Order, ECF No. 31. Mr. Alexander filed his Supplemental Brief to His Previously Filed Motion to Exclude Predicate Convictions ("Defendant's Supplemental Brief"), ECF No. 33, on May 30, 2025. The Government filed its Response in Opposition to Defendant's Supplemental Brief to His Previous Filed Motion to Exclude Predicate Convictions ("Government's Supplemental Brief"), ECF No. 34, on June 9, 2025. Mr. Alexander filed a Reply to the Government's Opposition to Defendant's Supplemental Brief ("Defendant's Supplemental Reply"), ECF No. 35, on June 13, 2025.

## II. LEGAL STANDARD

### A. Defining Violent Felonies

"Congress enacted [the] ACCA, as its full name makes clear, to address the special danger associated with armed career criminals," after finding that "[a] small percentage of repeat offenders . . . commit a large percentage of all violent crimes." *Borden v. United States*, 593 U.S. 420, 423 (2021) (plurality opinion) (citation modified). Thus, "[t]o allay that danger, [the] ACCA enhances the sentence of anyone convicted under 18 U.S.C. § 922(g) of being a felon in possession

of a firearm if he has three or more prior convictions (whether state or federal) for a 'violent felony.'"[1] *Id.*

In relevant part, the ACCA defines "violent felony" to include "any crime punishable by imprisonment for a term exceeding one year . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B). This portion of the ACCA is known as the "elements clause" or the "force clause."[2] *United States v. Allred*, 942 F.3d 641, 646 (4th Cir. 2019).

A previous conviction only falls within the ACCA force clause if, categorically, the conduct criminalized by the relevant statute involves the use, attempted use, or threatened use of force against the person of another. *Id.* at 648. That force, however, must be "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (rejecting argument that the force clause encompasses those offenses which may incur upon "mere unwanted touching").

Moreover, in *Borden v. United States*, the Supreme Court interpreted the language of the ACCA to require a *mens rea* of purposeful or knowing conduct. 593 U.S. at 429 (holding that the elements clause does not extend to "offenses criminalizing reckless conduct"). And, importantly, this *mens rea* must specifically relate to the force otherwise required by the ACCA. *See id.* ("The phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct

---

[1] The statute also creates an enhanced penalty based on convictions for "serious drug offense[s]." 18 U.S.C. § 924(e)(1). Here, however, the Government only argues that Mr. Alexander qualifies for an ACCA enhancement based on convictions for "violent felonies." Gov't's Resp. 2, ECF No. 21.

[2] The force clause stands in contrast to the ACCA's "enumerated offense clause," which lists specific offenses that constitute ACCA predicate offenses. 18 U.S.C. § 924(e)(2)(B)(ii) (defining "violent felony" as including convictions for "burglary, arson, or extortion" as well as convictions "involv[ing the] use of explosives."). Neither party argues that the enumerated offense clause is relevant here.

The ACCA also defines violent felonies in its "residual clause," which encompasses convictions "otherwise involv[ing] conduct that presents a serious potential risk of physical injury to another." *Id.* The residual clause was ruled unconstitutionally vague in *Johnson v. United States*, 576 U.S. 591 (2015), however, and therefore plays no part in the present analysis.

his action at, or target, another individual. . . . [C]onduct [that is less than knowing or purposeful] is not aimed in that prescribed manner."); *accord United States v. White*, 58 F.4th 889, 899 (6th Cir. 2023) (overturning the district court under *Borden* in part because "the underlying theft offenses ha[d] not been identified nor shown to have as an element the knowing or purposeful use, attempted use, or threatened use of physical force against the person of another" (citation modified)). Thus, it is insufficient for the Government to demonstrate that the underlying offense involves deliberate conduct generally: the offense of conviction must categorically involve deliberate *force*, whether actual, attempted, or threatened. *Borden*, 593 U.S. at 426–29.

In sum, in order to satisfy the force clause, the statute under which the defendant was previously convicted must categorically involve a showing that: (1) the defendant used, attempted to use, or threatened force against another person; (2) the force used, attempted, or threatened by the defendant was violent and capable of causing physical injury or harm; and (3) the defendant acted with the purpose or knowledge to use or threaten such violent force.

**B.      The Categorical Analysis**

In determining if an offense falls within the force clause, the Court must apply the "categorical approach." *E.g.*, *Allred*, 942 F.3d at 647–48. The categorical approach requires the Court to "counterintuitively ignore whether the defendant's actual conduct involved . . . a use of force." *Id.* Instead, the Court determines the "most innocent conduct that the law criminalizes" and asks whether *that* conduct necessarily includes actual or threatened force against another. *Id.* "If any—even the least culpable—of the acts criminalized does not require the kind of conduct that the force clause contemplates, the statute of conviction does not categorically match the federal standard, and so cannot serve as an ACCA predicate." *United States v. Redd*, 85 F.4th 153, 162 (4th Cir. 2023) (citation modified).

Courts must resist the temptation, however, to use the categorical analysis as an opportunity to apply "legal imagination to a state statute's language." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). Indeed, a statute may only fall outside the ACCA definition of a violent felony where there is "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" that definition. *Id.* A statute carries such a realistic probability where there exists actual case law in which a state court applied the statute in a manner outside the ACCA definition, or where the state statute "plainly covers" overbroad conduct. *Redd*, 85 F.4th at 172–73.

There are two forms of the categorical approach: the formal categorical approach and the modified categorical approach. *Allred*, 942 F.3d at 647. The formal categorical approach is appropriate when the underlying offense presents a single, indivisible set of elements that must be proven in order to obtain a conviction. *Id.* If a statute requires the application of the formal categorical approach, the Court may not consider any facts or records surrounding the defendant's previous conviction and must apply the categorical analysis to the statute as a whole. *Id.* at 647–48.

Conversely, the modified categorical approach is appropriate if the statute "includes multiple 'alternative elements' that create different versions of the crime." *Id.* at 648. If a statute requires the modified categorical approach, the Court may consider "a limited set of record documents (such as the indictment, jury instructions, or plea agreement)" during its analysis. *Id.* Even under the modified categorical approach, however, the Court "is still not permitted to consider the actual facts of the defendant's conviction." *Id.* Instead, the Court conducts its limited consideration of the record for the sole purpose of determining which version of the crime was committed. *Id.* In other words, pursuant to the modified categorical approach, the Court considers only the "mode" of the statute under which the defendant was actually convicted.

## III. ANALYSIS

**A.     The Current State of the Law**

Before discussing the merits of this matter, it is helpful to first review the relevant case law that informs this Court's decision. The instant matter is far from the first time that a district court has considered whether a conviction pursuant to § 18.2-53.1 categorically involves a use of force. *See, e.g.*, Gov't's Resp. 3, ECF No. 21 (collecting cases); *infra* n.13. In each instance, courts have found that § 18.2-53.1 is a categorical crime of violence. *See* Gov't's Resp. 3; *infra* n.13.

This case is also decided in the shadow of the Fourth Circuit's recent ruling in *United States v. Parham*, 129 F.4th 280 (4th Cir. 2025).[3] In *Parham*, the Fourth Circuit reaffirmed its holding in *United States v. White*, 24 F.4th 378 (4th Cir. 2022), that Virginia robbery does not constitute a categorical violent felony within the ACCA—or U.S.S.G. § 4B1.2(a), *see supra* n.4—because it "can be committed by threatening to accuse the victim of having committed sodomy, and, thus, does not have as a required element 'the use, attempted use, or threatened use of physical force against the person of another.'" *Parham*, 129 F.4th at 286. The Fourth Circuit remanded, however, for the district court to determine whether the defendant's conviction under Va. Code Ann. § 18.2-53.1 (use of a firearm in the commission of a felony) constituted a categorical crime of violence— the very issue raised by Mr. Alexander's present Motion. *Id.* at 289. With this context in mind, the Court turns to its consideration of the matter at hand.

---

[3] *Parham* involved the application of U.S.S.G. § 4B1.2(a), which applies to "crime[s] of violence." *Parham*, 129 F.4th at 282. However, the Sentencing Guidelines' definition of "crimes of violence" has been held to be substantively identical to "violent felonies" within the ACCA. *E.g.*, *id.* at 286–87, 286 n.3. And, because they are identical, courts construing either provision "rely upon precedents evaluating whether an offense constitutes a violent felony under [the ACCA] interchangeably with precedents evaluating whether an offense constitutes a crime of violence under U.S.S.G. § 4B1.2(a)." *United States v. Clay*, 627 F.3d 959, 965 (4th Cir. 2010). Thus, it is appropriate to rely on sentencing case law for the instant purpose of determining whether a crime falls within the ACCA force clause.

6

B.     **Va. Code Ann. § 18.2-53.1 Generally**

Section 18.2-53.1 of the Virginia Code generally prohibits the use of a firearm during the commission of a felony. *See* Va. Code Ann. § 18.2-53.1. The text of the statute provides:

> It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit murder, rape, forcible sodomy, . . . robbery, carjacking, burglary, malicious wounding . . . or abduction.

*Id.* Thus, § 18.2-53.1 is violated when a defendant commits one of the enumerated predicate offenses while using, attempting to use, or threateningly displaying a firearm.

Based on a plain reading of the text, one aspect of the statute is immediately notable: it does not have an independent *mens rea* requirement. Rather, the requisite *mens rea* stems from whatever *mens rea* is required for the underlying felony offense. *See generally Cox v. Commonwealth*, 240 S.E.2d 524 (Va. 1978) (describing only the larcenous intent associated with the underlying conviction); *Rowland v. Commonwealth*, 707 S.E.2d 331 (Va. 2011) (same); *Wiggins v. Commonwealth*, 622 S.E.2d 774 (Va. Ct. App. 2005) (same).

What is not evincible from the face of the statute, however, is that the term "firearm," within the meaning of § 18.2-53.1, encompasses both "firearms" in the traditional sense as well as "other objects that are not capable of firing projectiles but give the appearance of being able to do so." *Startin v. Commonwealth*, 706 S.E.2d 873, 879 (Va. 2011). In this sense, the Virginia Supreme Court has implemented a subjective standard for "firearm" that encompasses any object that appears to the victim to be a live weapon—including replica firearms, toy pistols, and genuine firearms loaded with blanks. *Id.* at 876–77 (holding that a "commemorative replica" firearm incapable of firing a projectile satisfied the statutory definition of "firearm" based solely on its "outward appearance"); *Cromite*, 348 S.E.2d at 40 (applying Va. Code Ann. § 18.2-53.1) ("We are convinced that, as to firearms, Virginia has heretofore adhered to the subjective standard and

7

we believe . . . that this is the proper standard."); *see also Johnson v. Commonwealth*, 163 S.E.2d 570, 574 (Va. 1968) ("The victim of a holdup is not required to know whether the gun pointed at him is loaded or whether it shoots bullets or blanks. If he is sensible he acts on appearances. A toy pistol has been held sufficient to sustain the allegation of robbery with firearms."); *cf. Commonwealth v. Barney*, 884 S.E.2d 81, 93 (Va. 2023) (Mann, J., dissenting).[4]

### C.   The Modified Categorical Approach Requires the Court to Consider § 18.2-53.1 as Well as Its Predicate Felony, Robbery

The modified categorical approach is appropriate in this case because, as identified by the Government, Virginia courts have often emphasized that § 18.2-53.1 convictions are simply greater-included versions of their predicate felonies; thus, to convict a defendant of § 18.2-53.1, the Commonwealth must prove beyond a reasonable doubt the organic elements of § 18.2-53.1 as well as the elements of its predicate offense. Gov't's Resp. 7 (citing, *e.g.*, *Holman v. Commonwealth*, 885 S.E.2d 493, 501 (Va. Ct. App. 2023) (vacating a § 18.2-53.1 conviction because the Commonwealth had failed to prove the elements of the predicate felony, malicious wounding)).

---

[4] The parties disagree as to the significance and meaning of the holding in *Barney*. *Compare* Def.'s Suppl. Br. 2, 2 n.2, ECF No. 33, *with* Gov't's Suppl. Br. 6, ECF No. 34. In *Barney*, the Virginia Supreme Court considered whether there was sufficient evidence to support a defendant's Va. Code Ann. § 18.2-53.1 conviction where no firearm (or firearm-like object) had been recovered, and there was reason to believe that the defendant had only been "armed" by her finger in her pocket. *Barney*, 884 S.E.2d at 84–86. The *Barney* majority opinion determined that the evidence was sufficient to support the conviction, even though all evidence that the defendant had possessed a "firearm" was circumstantial and based on the victim's perception. *See id.* at 89–90. The *Barney* dissent accused the majority of permitting a conviction based solely on the "victim's subjective belief as to the presence of a firearm"—a view that the Virginia Supreme Court rejected in *Yarborough v. Commonwealth*, 441, S.E.2d 342, 342 (1994). *Barney*, 884 S.E.2d at 93 (Mann, J., dissenting). The majority rebuffs this contention. *Id.* at 92 n.8 (majority opinion). However, as critical here, both views agree that the statutory definition of firearm encompasses objects that are not themselves "capable of expelling a projectile . . . but give[] the appearance of being able to do so. *Compare id.* at 87, *with id.* at 94 (Mann, J., dissenting).

To this Court, the relevant take-away from *Barney* is that one's finger is not, as a matter of Virginia law, an *object* that "gives the appearance of being able to [expel a projectile]." *Id.* at 87 (majority opinion). However, so long as a defendant possessed an object—that is, an item extrinsic to himself—which subjectively appeared to the victim as a firearm, that object will satisfy the "firearm" element of the statute.

Section 18.2-53.1 prohibits the use of a firearm during the commission of twelve, enumerated, predicate offenses. In this sense, § 18.2-53.1 presents twelve divisible crimes, each with distinct elements. Thus, the modified categorial approach is required to determine which version of § 18.2-53.1 applies to the instant analysis. *Allred*, 942 F.3d at 647–48.

In this case, a limited review of the record—as instructed by the modified categorical approach, *id.*—reveals that Mr. Alexander's § 18.2-53.1 offenses were both committed under the robbery modality of the statute. Mot. Exclude Ex. A. As such, the Court considers the full extent of the elements which are required to obtain a § 18.2-53.1 conviction for use of a firearm during the commission of a robbery. Those elements are:

> [1] That the defendant displayed in a threatening manner, used, or attempted to use a firearm;
> [2] That the display, use, or attempted use occurred while the defendant was committing or attempting to commit robbery, as articulated below[;]
> [3] That the defendant had the intent to steal (larcenous intent);
> [4] That the defendant took personal property;
> [5] That the taking was from the person of another or in his presence;
> [6] That the taking was against the will of the owner or possessor; and
> [7] That the taking was accomplished by violence to the person, intimidation of the person, the threat of serious bodily harm, the threat or presenting of a firearm, the threat or presenting of a deadly weapon.

1 Va. Model Jury Instrs., Crim. Instr. Nos. 18.700, 47.100 (2025).[5]

---

[5] Despite the fact that *Parham* confirmed that Virginia robbery fails the categorical analysis, and notwithstanding Mr. Alexander's arguments to the contrary, Def.'s Suppl. Reply 4–6, ECF No. 35, the rule of *Parham* does not foreclose the instant analysis. Because the matter before the Court is whether Virginia robbery *and* the added elements of § 18.2-53.1 constitute a categorical crime of violence, the Court must imagine what *singular* course of conduct could satisfy all of those elements. *E.g., United States v. Roof*, 10 F.4th 314, 401–02 (4th Cir. 2021) (clarifying, for purposes of the categorical analysis, that courts "do not view each element of the crime in isolation"); *see also In re Irby*, 858 F.3d 231, 236 n.2 (4th Cir. 2021).

As described above, *Parham* held that Virginia robbery, by itself, is not a categorically violent felony since it can be committed by constructive force: threatening to publicly accuse the victim of sodomy. *Parham*, 129 F.4th at 286. The Government rightly identifies that the possibility of a defendant committing a robbery with only the constructive force identified in *Parham* but otherwise using a firearm within the meaning of Va. Code Ann. § 18.2-53.1 is virtually nonexistent, and therefore insufficient to place Mr. Alexander's underlying offenses outside the

**D.      Use of Firearm During a Robbery in Violation of Virginia Code § 18.2-53.1 is a Categorically Violent Felony**

In his initial brief, Mr. Alexander argued that his Va. Code Ann. § 18.2-53.1 convictions do not support the ACCA enhancement sought by the Government because the plain language of the statute could be read to apply even where a defendant only threatens self-harm. Mot. Exclude 3. Alternatively, Mr. Alexander argued that § 18.2-53.1 does not categorically involve a use of violent force because the statute covers mere "use" of a firearm during the commission of an offense, which could encompass non-violent uses. Mot. Exclude 6–7.

In his Supplemental Brief, Mr. Alexander further argues that Va. Code Ann. § 18.2-53.1 cannot constitute a categorical crime of violence because the statutory definition of "firearm" employs a subjective standard that "does not require proof the defendant actually used . . . a firearm, so long as the victim believed the defendant had one." Def.'s Suppl. Br. 2, ECF No. 33. Specifically, Mr. Alexander argues that this subjective standard means that Va. Code Ann. § 18.2-53.1 encompasses conduct beyond the ACCA's violent felony definition on two accounts: first, because it prohibits conduct that does not itself involve *violent* force, *id.* at 3–4, and second, because such an offense can be committed even when a defendant bears only a reckless *mens rea* as to the use of force, *id.* at 4–6.[6]

---

ACCA's definition of violent felonies. Gov't's Resp. 14–15, ECF No. 21. Thus, the rule of *Parham* plays a limited role in the instant analysis.

[6] Mr. Alexander also argues that Va. Code Ann. § 18.2-53.1 is not a categorically violent felony because it can be committed by a defendant even when the firearm was only actually possessed and used by a co-actor. Def.'s Suppl. Br. 7–8 (citing *Carter v. Commonwealth*, 348 S.E.2d 265 (Va. 1986)). In order to amount to a violent felony, however, the ACCA merely requires that the relevant offense "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e). The statute makes no requirements as to whose conduct must underlie the element of force. Indeed, the Fourth Circuit has held that Hobbs Act robbery constitutes a categorically violent felony, *United States v. McDaniel*, 800 F. App'x 184, 186 (4th Cir. 2020), despite the fact that a defendant may be so convicted under principles of *Pinkerton* liability. *United States v. Gillespie*, 27 F.4th 934, 938 (4th Cir. 2022). As such, the Court finds this argument unavailing.

In its initial Response, the Government largely argued that, given the elements of the relevant § 18.2-53.1 predicate offense—robbery—Mr. Alexander's § 18.2-53.1 convictions must constitute categorically violent felonies. Gov't's Resp. 5–11. In its Supplement Brief, the Government argues that Va. Code Ann. § 18.2-53.1 is categorically violent because a conviction requires a showing that the defendant's conduct, at minimum, produced fear of physical harm sufficient to overcome a victim's resistance. Gov't's Suppl. Br. 2–5, ECF No. 34. Next, as to Mr. Alexander's *mens rea* argument, the Government argues that the statute meets the ACCA's purpose-or-knowledge requirement because it requires deliberate conduct. *Id.* at 9–13.

The Court agrees with the Government's top-level conclusions. Because Va. Code Ann. § 18.2-53.1 as applied to the use of a firearm during a robbery is a categorically violent felony, the Court will deny Mr. Alexander's Motion to Exclude.

1.  <u>Va. Code Ann. § 18.2-53.1 Robbery Offenses Require Violent Force</u>

First, the Court concludes that, notwithstanding the statute's subjective definition of "firearm," the statute categorically encompasses violent force within the meaning of ACCA.

To constitute a categorically violent felony, the minimum conduct to sustain a conviction pursuant to the underlying statute must uniformly involve the actual, attempted, or threatened use of "*violent* force—i.e., force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 141 (emphasis in original). Critically, a defendant threatens violent force within the meaning of the ACCA whenever he intimidates or causes fear of injury—even where he lacks the tools to effectuate his threat. *United States v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019) ("the use of intimidation, . . . necessarily involves the threat to use physical force"); *accord United States v. McNeal*, 818 F.3d 141, 154 (4th Cir. 2016); *cf. McLaughlin v. United States*, 476 U.S. 16, 17 (1986) (holding that an unloaded firearm is a "dangerous weapon" because its display "instills fear in the average citizen").

Here, Mr. Alexander argues that, because Va. Code Ann. § 18.2-53.1 can be violated by using an object merely shaped like a firearm, it does not categorically involve violent force as defined by *Johnson*. Def.'s Suppl. Br. 3–4. In response, the Government argues that, notwithstanding the statute's subjective standard, it involves violent force because a firearm-shaped object may be used as a bludgeon and, even when it is only displayed threateningly, it instills fear in a victim. Gov't's Suppl. Br. 3–5.

The Court agrees with the Government's ultimate conclusion, albeit not for the reasons argued in the Government's briefs. As described above, a defendant can commit a robbery in violation of Va. Code Ann. § 18.2-53.1 by displaying a firearm-shaped object that, while causing an apprehension of harm in the victim, lacks the capacity to consummate the threatened force. *Startin*, 706 S.E.2d at 879; *cf. United States v. Goffigan*, 216 F. Supp. 3d 672, 678 (E.D. Va. 2016) (interpreting Va. Code Ann. § 18.2-53.1) ("[W]ielding a toy pistol can create a reasonable fear of bodily harm to constitute intimidation even though the act is objectively harmless."). Although Defendant is correct that doing so would not constitute the actual or attempted use of true physical, i.e., violent, force, it nevertheless constitutes the *threatened* use of force capable of causing physical pain or injury.

This conclusion is borne out by the established principle that the ACCA's force requirement may be satisfied by mere *intimidation*, even when the defendant could not act on his threat. *Mathis*, 932 F.3d at 266 (finding intimidation to be interchangeable with fear of injury). And, critically, the Virginia Supreme Court has made clear that Va. Code Ann. § 18.2-53.1 only covers the use or display of objects that induce fear of physical harm, resulting in intimidation. *Holloman v. Commonwealth*, 269 S.E.2d 356, 358 (Va. 1980) ("The purpose of [Va. Code Ann.] § 18.2-53.1, . . . is to deter violent criminal conduct. . . . The statute not only is aimed at preventing actual physical injury or death but also is designed to discourage criminal conduct that produces

12

fear of physical harm."); *Mathis*, 932 F.3d at 266. Thus, the threatening display of a "firearm" within the broad meaning of Va. Code Ann. § 18.2-53.1 still constitutes a threatened use of violent force for purposes of the ACCA. Accordingly, the minimum conduct sufficient to sustain a conviction under the statute satisfies the ACCA's force requirement, notwithstanding its subjective definition of "firearm."[7]

        2.    <u>There is not a Realistic Probability that Virginia Would Apply Virginia Code Ann. § 18.2-53.1 to Reckless Uses or Threats of Force</u>

The Court now turns to the ACCA's *mens rea* requirement. In *Borden*, the Supreme Court read the ACCA violent felony definition to require a *mens rea* of purpose or knowledge as to the use of force. 593 U.S. at 429. The Government argues that Va. Code Ann. § 18.2-53.1 satisfies that rule because the statute requires deliberate conduct, i.e., a deliberate taking of personal property. Gov't's Suppl. Br. 9–10, 12–13 ("No Virginia court has held that Virginia robbery may be committed recklessly"). Mr. Alexander argues, however, that the statute does not set out the *mens rea* where it matters most—the defendant's intent as to use of force—and therefore fails to satisfy *Borden*'s purpose-or-knowledge requirement. Def.'s Suppl. Br. 6.

Mr. Alexander is, in some respects, correct. The effect of *Borden* was not to require deliberate conduct *generally*, but to specifically require a *mens rea* of purpose or knowledge as to the violent force otherwise required by the ACCA. *See Borden*, 593 U.S. at 429. Thus, the fact that a statute requires deliberate conduct generally is insufficient; the statute must categorically involve a deliberate or knowing use, attempt, or threat of force. *See id.*; *cf. United States v.*

---

[7] The Court disagrees with the Government's argument that Virginia Code Ann. § 18.2-53.1 constitutes a categorical crime of violence because a toy pistol could be used as a bludgeon. This argument clearly fails to comport with the task of the categorical analysis, which is to consider the *least* culpable conduct covered by the statute. *Borden*, 593 U.S. at 424. The scenario in which a defendant actually uses, attempts, or threatens to use a firearm-shaped object as a bludgeon is clearly not the least culpable conduct covered by Va. Code Ann. § 18.2-53.1. *See, e.g.*, *Startin*, 706 S.E.2d at 377, 382–83 (upholding one count of use of a firearm during a robbery, in violation of Va. Code Ann. § 18.2-53.1, based on evidence that the defendant robbed a pharmacist by "lift[ing] his shirt to reveal an object that appeared to be . . . a handgun," but was actually a "commemorative replica" incapable of firing an explosive, and telling the pharmacist he "needed a bottle of Oxycontin"). Thus, the Court finds this argument unavailing.

*Thomas*, 87 F.4th 267, 270 (4th Cir. 2023) (clarifying that the analogous "crime of violence" aspect of 18 U.S.C. § 924(c) "must have as an element the use, attempted use, or threatened use of physical force against the person or property of another, and that force must be applied with a *mens rea* greater than recklessness" (citation modified)); *accord White*, 58 F.4th at 895.

    As noted previously, *supra* Part III.B, and as is evidenced by the plain text of Va. Code Ann. § 18.2-53.1, the statute has no independent *mens rea* requirement. Rather, the statute borrows the *mens rea* of the predicate offense. *See* Va. Code Ann. § 18.2-53.1; 1 Va. Model Jury Instrs., Crim. Instr. No. 18.700. Thus, when the predicate offense is robbery, as is the case here, the only intent that the Commonwealth must prove to obtain a conviction is a specific intent to take. *Chappelle*, 504 S.E.2d at 379; *see also Bivins v. Commonwealth*, 454 S.E.2d 741, 753–54 (Va. Ct. App. 1995) (explaining that a defendant may commit Virginia robbery even if his intent "is merely to take") (emphasis added). In other words, an § 18.2-53.1 conviction for use of a firearm during the commission of a robbery could be sustained despite the fact that the Commonwealth did not specifically prove that the defendant bore a purposeful or knowing intent as to the use or threat of violent force. Nevertheless, the Court finds that there is not a "realistic probability" that the Commonwealth of Virginia would prosecute a defendant for use of a firearm during the commission of a robbery where he did not bear a purpose or knowledge to, at least, threaten violent force.

    As stated above, a statute only falls outside the ACCA definition of a violent felony where there is "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" that definition. *Gonzales*, 549 U.S. at 193. A statute carries such a realistic probability where there exists actual case law in which a state court applied the statute in a manner outside the ACCA definition, or where the state statute "plainly covers" overbroad conduct. *Redd*, 85 F.4th at 172–73.

14

Even considering the least culpable conduct proscribed by the statute, in order to obtain a conviction for use of a firearm during a commission of a robbery, the Commonwealth must, in relevant part, demonstrate that the defendant: (1) used, attempted to use, or threateningly displayed a firearm or firearm-shaped object; (2) "while the defendant was committing or attempting to commit [a taking];" (3) "[t]hat the taking was against the will of the owner or possessor"; and (4) "[t]hat the taking was accomplished by violence to the person, intimidation of the person, the threat of serious bodily harm, the threat or presenting of a firearm, [or] the threat or presenting of a deadly weapon." 1 Va. Model Jury Instrs., Crim. Instr. Nos. 18.700, 47.100 (2025). And, as identified by the Government, *see* Gov't's Resp. 3 n.2, the defendant's "use or display" of the firearm or firearm-shaped object must be "in furtherance of" the underlying felony (here, robbery). *Rhodes v. Commonwealth*, 2023 WL 6394042, at *8 (Va. Ct. App. Oct. 3, 2023).

The Court finds that the scope of conduct in which a defendant satisfies the above-listed elements but did not at least contemplate that his display or use of a firearm would be understood as a threat of violent force is so slim as to be virtually nonexistent. *See Roof*, 10 F.4th at 402 (finding that a predicate felony constituted a categorically violent crime even when there was not an express *mens rea* requirement as to the use of force because there was no "realistic scenario . . . where a defendant could engage in [the conduct of offense] . . . without knowing or intending to inflict upon that person [the requisite level of force]"); *cf. United States v. Canada*, 123 F.4th 159, 162 (4th Cir. 2024) (vacating sentence and remanding case for resentencing post-*Borden* after receiving confirmation from the South Carolina Supreme Court that the underlying state offense could "be committed with general criminal intent, including a mental state of recklessness"). After all, a Va. Code Ann. § 18.2-53.1 defendant must have "used" or "*threateningly* displayed" his firearm or firearm-shaped object in furtherance of a forceful taking, which demonstrates a "state of mind . . . more culpable than the reckless conduct described in *Borden*." *United States v.*

15

*Manley*, 52 F.4th 143, 152 (4th Cir. 2022) (holding that a defendant commits a categorically violent crime when he commits an "assault . . . for a racketeering-related pecuniary purpose or with the purpose of improving his position in a racketeering enterprise," even when the statute did not proscribe a particular *mens rea* as to the use or threat of force). The Defendant has not identified any instances in which the Commonwealth of Virginia actually prosecuted a § 18.2-53.1 defendant who bore a merely reckless intent as to his use, attempted use, or threatened use of force.[8] *See generally* Mot. Exclude, ECF No. 17; Def.'s Suppl. Br., ECF No. 33; Def.'s Suppl. Reply, ECF No. 35. Neither has the Defendant persuaded the Court that the statute "plainly covers" overbroad conduct. *Redd*, 85 F.4th at 172–73.

Accordingly, the Court finds that there is not a "realistic probability" that the Commonwealth of Virginia would prosecute a defendant for conduct beyond that contemplated by the ACCA. *Gonzales*, 549 U.S. at 193. As such, the Court further finds that Mr. Alexander's § 18.2-53.1 robbery convictions constitute categorically violent felonies and therefore support the ACCA enhancement sought by the Government.[9] Thus, the Court will deny Mr. Alexander's Motion.

---

[8] Mr. Alexander contends that *Commonwealth v. Barney*, 884 S.E.2d 81 (Va. 2023), constitutes such a conviction. Def.'s Suppl. Br. 5–6. As the Court described *supra* n.5, the *Barney* defendant was convicted of § 18.2-53.1 for use of a firearm during the commission of a felony even though no firearm—or firearm-shaped object—had been recovered. *See generally Barney,* 884 S.E.2d 81. The Virginia Supreme Court upheld the conviction. *Id.* at 103. However, as relevant here, the Virginia Supreme Court did so because, based on the facts presented at trial, "a rational jury could find that Barney threatened to kill [the robbery victim] during the robbery and used a concealed firearm as the threatened murder weapon." *Id.* at 102. A defendant who engages in such conduct certainly acts with the purpose or knowledge that he threatens violent force. Thus, *Barney* does not support Mr. Alexander's argument to this point.

[9] This conclusion apparently aligns with that of every other district court to consider this question. *E.g.*, *Williams v. United States*, 2023 WL6849433, at *6 (E.D. Va. Oct. 16, 2023); *United States v. Al-Muwwakkil*, 2021 WL1912373, at *3 (E.D. Va. May 12, 2021); *Robinson v. United States*, 2018 WL 2027092, at *5–6 (W.D. Va. May 1, 2018) ("A review of Virginia case law establishes that even the minimum conduct necessary to allow for a conviction under Virginia Code § 18.2-53.1 requires the type of violent force, or threatened violent force necessary under the ACCA"); *Pannell v. United States*, 2018 WL 542897, at *8 (W.D. Va. Jan. 24, 2018) ("Plainly, a conviction under Virginia Code § 18.2-53.1 for use or display of a firearm in committing a felony, qualifies as a violent felony under the force clause of the ACCA") (vacated on other grounds).

### E.   The Balance of Mr. Alexander's Arguments are Unavailing

Mr. Alexander additionally argues that Va. Code Ann. § 18.2-53.1 cannot constitute a categorically violent felony because: (1) the statute's prohibition of the "use" of a firearm might mean nonviolent conduct, and (2) the statute could cover a threatened use of *self-harm*. *See generally* Mot. Exclude. The Court, however, disagrees on both accounts.

First, as the Court described *supra*, a § 18.2-53.1 conviction for use of a firearm in the commission of a felony must involve the use of a firearm in *furtherance* of a forceful taking, *supra* Part III.D.2; *Rhodes*, 2023 WL 6394042, at *8. What constitutes "furtherance" is significantly limited by the fact that the defendant must have accomplished the taking "by violence to the person, intimidation of the person, the threat of serious bodily harm, the threat or presenting of a firearm, the threat or presenting of a deadly weapon." 1 Va. Model Jury Instrs., Crim. Instr. Nos. 18.700, 47.100 (2025). Accordingly, the statute's employment of the term "use" does not mean, as Mr. Alexander suggests, that it could by satisfied by "scratching one's head with a gun." Mot. Exclude 6–7.[10]

Second, the Court disagrees with Defendant's assertion that a robbery violation of Va. Code Ann. § 18.2-53.1 could be committed by a mere threatened use of *self-harm*. Indeed, a threatened use of self-harm would not constitute violent force within the meaning of the ACCA. *See United States v. Davis*, 53 F.4th 168 (4th Cir. 2022). However, as the Court described *supra*, the modified categorical analysis requires the Court to consider what singular course of conduct would satisfy the elements of Va. Code Ann. § 18.2-53.1 *and* that of its relevant predicate offense,

---

[10] In support of this argument, Mr. Alexander cites *Smith v. United States*, 508 U.S. 223, 232–33 (1993). Mot. Exclude 6–7. However, as the *Williams* court explained, "*Smith* actually contradicts [the Defendant's] theory, by explaining that when interpreting the elements of 18 U.S.C. § 924(c)(1), which require the imposition of specified penalties if a defendant used a firearm during and in relation to a drug trafficking crime, the Supreme Court clarified that a firearm that served to relieve an itch is not enough where a statute required that the use facilitates or furthers the crime.'" 2023 WL 6849433, at *4. Thus, the Court finds Mr. Alexander's argument unavailing.

17

robbery. *Supra* Part III.C; *supra* n.6. And, while the plain language of Va. Code Ann. § 18.2-53.1 alone does not require a use of force against the person of another, the elements of robbery clearly do. *E.g.*, *Spencer v. Commonwealth*, 592 S.E.2d 400, 403 (2004) ("To sustain a robbery conviction, force or intimidation *must be directed at the person of the victim*." (emphasis added)). Thus, the Court cannot reasonably say that a defendant could violate Va. Code Ann. § 18.2-53.1 for use of a firearm during the commission of a robbery based purely on threatened self-harm, since, at some point during the offense, that force must be directed at the victim. *E.g.*, *id.*

In an effort to avoid this conclusion, Mr. Alexander cites to *Breeden v. Commonwealth*, 596 S.E.2d 563, 569 (Va. Ct. App. 2004). Mot. Exclude 4–6. That case, however, considered a Va. Code Ann. § 18.2-53.1 conviction for use of a firearm during the commission of a rape. *Breeden*, 596 S.E.2d at 567–68. Thus, it bears little on the instant analysis. *Allred*, 942 F.3d at 650 (explaining that, where a court applies the modified categorical approach, it treats "each formulation of the crime" as "separate crimes") (citing *United States v. Vinson*, 794 F.3d 418, 425 (4th Cir. 2015)). Moreover, the facts of *Breeden* belie Mr. Alexander's point: while the *Breeden* victim did testify that she "was afraid [the defendant] was going to kill himself," the factfinding court found that the defendant "used a combination of threats and force to intimidate the [victim]," insofar as he held a gun or guns or otherwise kept one near him "the entire time" while threatening and abusing the victim, he followed her up the stairs while holding the guns, and he "put the pistol on a shelf above the bed within his reach while he raped her." *Breeden*, 596 S.E.2d at 566–69. Thus, the conviction in *Breeden* was clearly not based solely on threatened self-harm.

Finally, the Court acknowledges that, in the sentencing context, it was previously persuaded that Va. Code Ann. § 18.2-53.1 convictions were not categorically violent crimes, since the § 18.2-53.1 statute alone could be read to cover threatened self-harm. Mot. Exclude 3. Nevertheless, after deeper review, the Court now finds that the elements of Va. Code Ann. § 18.2-

53.1 in combination with the predicate robbery offense dictates a finding that there is not a "realistic probability" that a defendant would be prosecuted for such an offense based solely on threatened self-harm. *Gonzales*, 549 U.S. at 193. Thus, the Court rejects Mr. Alexander's argument accordingly.

## IV. CONCLUSION

The Court concludes that Va. Code Ann. § 18.2-53.1 convictions for use of a firearm during the commission of a robbery constitute categorically violent felonies within the meaning of the ACCA. Thus, the Motion to Exclude will be denied. An appropriate Order shall issue.

/s/ *RCY*
Roderick C. Young
United States District Judge

Date: July 16, 2025
Richmond, Virginia